Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 17, 2019

**2019 CO 54**

**No. 18SA221, *In re People in the Interest of T.T.*—Mental Health—Court Records—
Public Access.**

In this original proceeding under C.A.R. 21, the supreme court reviews whether

"Eclipse," the user interface of the judicial branch's computerized case management

system, is an "index of cases" as contemplated by section 27-65-107(7), C.R.S. (2018)

(requiring clerk to omit names of persons released from involuntary short-term mental

health treatment from the court's "index of cases").  In *People in the Interest of T.T.*,

2017 COA 132, 410 P.3d 792, the court of appeals held that Eclipse is an "index of cases"

for purposes of section 27-65-107(7) and directed the district court to order that plaintiff's

name be omitted from the Eclipse system and any lists generated from the system's data.

Plaintiff sought C.A.R. 21 relief asking the supreme court to direct the district court to

comply with the court of appeals' mandate.

The supreme court issued a rule to show cause but declines to grant plaintiff's

requested relief.  Plaintiff's mental health case remains sealed and is not accessible to the

public.  The court holds that neither the Eclipse user interface, nor its underlying

database, ICON, functions as an "index of cases" for purposes of section 27-65-107(7).

Moreover, to remove an individual's name from this case management system would thwart the court's statutory obligations to link the record of a short-term mental health case with subsequent cases involving that individual and to share certain information with the federal government.  Because the district court's compliance with the court of appeals' mandate is neither warranted nor feasible, the supreme court discharges the rule to show cause and disapproves of the court of appeals' opinion in *T.T.*

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 54

**Supreme Court Case No. 18SA221**
*Original Proceeding Pursuant to C.A.R. 21*
Arapahoe County District Court Case No. 14MH13
Honorable Theresa M. Slade, Judge

**In Re**
**Petitioner:**

The People of the State of Colorado,

**In the Interest of**

**Respondent:**

T.T.

**Rule Discharged**
*en banc*
June 17, 2019

**Attorney for Respondent:**
James C. Recht
    *Castle Rock, Colorado*

**Attorneys for Christopher Ryan, State Court Administrator; Shana Kloek, Clerk of the Arapahoe County Court; and the Honorable Theresa Slade:**
Philip J. Weiser, Attorney General
Emily B. Buckley, Assistant Attorney General
    *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE SAMOUR** does not participate.

¶1     Under section 27-65-107(7), C.R.S. (2018), when a person is released from short-term treatment for a mental health condition, the clerk of the district court shall seal the record in the case and omit the name of the person from the court's "index of cases." The key question in this original proceeding is whether "Eclipse," the user interface of the judicial branch's computerized case management system, is an "index of cases" as contemplated by section 27-65-107(7).

¶2     This case comes before us in a rather complicated procedural posture. T.T. seeks to ensure that his name is not linked to the record of his earlier short-term commitment for treatment of a mental health condition. In a published, split decision issued in 2017, the court of appeals held that Eclipse is an "index of cases" for purposes of section 27-65-107(7) and directed the district court to order that T.T.'s name be omitted from the Eclipse system and any lists generated from the system's data. *People in the Interest of T.T.*, 2017 COA 132, ¶¶ 23, 26, 410 P.3d 792, 797–98. T.T. later attempted to enforce the court of appeals' decision by petitioning the district court for an order certifying that it had complied with the court of appeals' directive. The district court declined to issue such an order and instead invited T.T. to set the issue for a hearing at which testimony could be taken about the feasibility of compliance with the court of appeals' mandate. T.T. instead filed a motion to enforce the mandate with the court of appeals, which denied relief for lack of jurisdiction. T.T. then sought C.A.R. 21 relief in this court, asking us to direct the district court to comply with the court of appeals' mandate.

2

¶3 We issued a rule to show cause but decline to grant T.T.'s requested relief. As discussed in this opinion, the reference to "index of cases" in section 27-65-107(7) contemplates a list of matters before the court that can be used to locate the actual court records for those matters. But the Eclipse user interface itself contains no data, and neither Eclipse nor its underlying database, ICON, functions as an "index" or list of cases. Thus, contrary to the court of appeals' ruling, section 27-65-107(7) does not require the court clerk to remove T.T.'s name from the ICON/Eclipse case management system. Moreover, to remove an individual's name from this case management system would thwart the court's statutory obligations to link the record of a short-term mental health case with subsequent cases involving that individual and to share certain information with the federal government. Because the district court's compliance with the court of appeals' mandate is neither warranted nor feasible, we discharge the rule to show cause, and disapprove of the court of appeals' opinion in *T.T.*

## I. Facts and Procedural History

¶4 In January 2014, T.T. was placed in involuntary short-term mental health treatment. His case was sealed at filing and, under sections 3.07 and 4.60(b)(5) of Chief Justice Directive (CJD) 05-01, was accessible only to judges, court staff, and other authorized department staff unless otherwise directed by court order. T.T. was released seven days later.

¶5 A little over two years after his release, T.T. visited the Arapahoe County Justice Center and asked the clerk if his name had been omitted from the index. Although it is

3

unclear from the record and previous rulings in this case exactly what information was conveyed to T.T., it appears that, at a minimum, someone in the clerk's office confirmed that the case existed.[1] T.T. was upset that his name was still linked to his mental health case and requested that the clerk remove it from the court's index of cases. When the clerk declined to do so, T.T. filed a motion with the district court seeking an order requiring the clerk to remove his name.

¶6 T.T. argued that Eclipse is an "index of cases" for purposes of section 27-65-107(7) and therefore, once T.T.'s mental health case was closed, the clerk was required to seal the record in the case and remove T.T.'s name from Eclipse. The district court denied the motion. T.T. appealed, and the court of appeals ordered a limited remand directing the district court to conduct a hearing and enter findings of fact and conclusions of law. On remand, the county attorney argued that the "index of cases" contemplated by section 27-65-107(7) is the list of open and closed cases that can be generated using Eclipse, but not Eclipse itself. Following remand, the district court issued an order granting T.T.'s motion in part and denying it in part.

---

[1] Although the record before us sheds no light on this point, it is possible that the clerk did not consider T.T. to be a member of the "public" because he was a primary party to the case. *See* CJD 05-01, § 2.00(b)(4) (providing that the "public" does not include "the primary parties to a case as defined by the custodian, their lawyers, other authorized representative, or persons appointed by the court regarding access to the court record in their specific case").

¶7 First, the district court observed that mental health cases are sealed at filing, and that such files are accessible only to judges and authorized staff unless the court orders otherwise. In this case, the file was also accessible by T.T.'s appointed counsel and the county attorney. The district court explained that the court clerk had properly sealed and closed T.T.'s case, that the file was physically removed from the mental health case file room and taken to a locked storage facility, and that it is not accessible to anyone except certain supervisors without a court order. The court acknowledged that there exists an "index" of names and case numbers that is used only to search the locked storage facility. But it noted that section 4.60 of CJD 05-01 specifically states that mental health cases are not accessible to the public unless the court orders otherwise.

¶8 Next, the district court found that Eclipse is not an "index of cases" for purposes of section 27-65-107(7), but rather a "searchable database" that can be used to generate open and closed case reports, daily dockets, and other reports. The court rejected T.T.'s argument that the statute required his name to be "deleted" from any database altogether. It reasoned that section 27-65-107(7) does not require the clerk to omit the respondent's name from "all court record[s]," but only from the "index of cases." The court concluded that the "index" meant any list of cases generated by the Eclipse system. It also noted that if Eclipse were deemed the "index of cases," removing T.T.'s name from the system would prevent compliance with section 27-65-107(7)'s requirement that the respondent's short-term treatment record be re-opened and made part of the record in a subsequent long-term care and treatment case. Thus, the district court granted the

5

motion in part and ordered that T.T.'s name be omitted from any list generated or produced by Eclipse (even for purposes of storage), but denied the motion to the extent T.T. requested his name be removed from Eclipse. T.T. appealed.

¶9     In a published, split opinion, the court of appeals reversed, concluding that the Eclipse system is the "index of cases" contemplated by section 27-65-107(7). *T.T.*, ¶¶ 23, 26, 410 P.3d at 797. The division majority rejected the county attorney's argument that omitting T.T.'s name from Eclipse would "obliterate" the record in the case and make it impossible to re-index T.T.'s name as required by statute should T.T. become subject to an order of long-term care. *Id.* at ¶ 25, 410 P.3d at 797. The majority reasoned that mental health cases could be managed without including the names of those committed, noting that the names of sexual assault victims are omitted from records in criminal cases and that juvenile defendants' names are typically replaced with initials in case captions and opinions. *Id.* at ¶¶ 24–25, 410 P.3d at 797.

¶10    In dissent, Judge Bernard concluded that the "index of cases" contemplated by section 27-65-107(7) means a list of matters before the court that is available for public inspection. *Id.* at ¶¶ 33–37, 410 P.3d at 798 (Bernard, J., dissenting). He reasoned that Eclipse is not an "index" as contemplated by section 27-65-107(7) because he surmised that the Eclipse system is not accessible to the public, given that it contains confidential information. *Id.* at ¶¶ 38–40, 410 P.3d at 798.

¶11    The court of appeals remanded with directions to "omit T.T.'s name from the Eclipse system and lists generated from the Eclipse system's data by use of T.T.'s initials

or any other method omitting identifying information that the district court chooses to employ consistent with this opinion." *Id.* at ¶ 28, 410 P.3d at 798. The county attorney did not seek certiorari review of the court of appeals' ruling.

¶12 T.T. later filed a request in the district court, asking it to certify that it had removed his name from Eclipse. In a written order, the district court declined to do so, stating that it could not both be a fact finder and provide the facts. Instead, it offered to hold a testimonial hearing to allow T.T. to call witnesses to answer questions about compliance with the court of appeals' order.[2] Instead of requesting a hearing, T.T. filed a motion to enforce the mandate with the court of appeals, which denied relief for lack of jurisdiction. T.T. then filed this petition under C.A.R. 21, seeking enforcement of the court of appeals' mandate. We issued a rule to show cause, naming the state court administrator, the clerk of the Arapahoe County Court, and the district court judge as respondents.

## II. Analysis

¶13 T.T. effectively seeks a writ of mandamus compelling the district court to omit his name from the Eclipse system in compliance with the court of appeals' mandate. *See Bd. of Cty. Comm'rs v. Cty. Road Users Ass'n*, 11 P.3d 432, 437 (Colo. 2000) ("Mandamus lies to compel the performance of a purely ministerial duty involving no discretionary right and not requiring the exercise of judgment."). He argues that based on the plain

---

[2] The district court's invitation to hold a hearing appears to be in response to the court of appeals' suggestion in a footnote of its opinion that an evidentiary hearing would have created a more useful record for the court to review. *T.T.*, ¶ 27 n.2, 410 P.3d at 798 n.2.

7

language of section 27-65-107(7), his name should have been removed from Eclipse when he was released from treatment. Because a court clerk confirmed the existence of his mental health case, he concludes that his name has not been removed from the "index of cases" and asks this court to compel the district court to remove it from Eclipse.

¶14 Respondents contend that Eclipse is not an "index of cases" as contemplated by section 27-65-107(7), and therefore removal of T.T.'s name from Eclipse is not required. Moreover, Respondents contend, removal of T.T.'s name from the ICON/Eclipse case management system is not feasible without causing significant disruption of judicial records management and the ability of the judicial branch to comply with federal and state statutes.

¶15 Examining the plain language of section 27-65-107(7) and associated statutes referencing an "index of cases," we conclude that this term contemplates a list of matters before the court that can be used to locate the actual court records for those matters. But the Eclipse user interface itself contains no data, and neither Eclipse nor its underlying database, ICON, functions as an "index" or the kind of master list of cases contemplated by section 27-65-107(7). Thus, contrary to the court of appeals' ruling, section 27-65-107(7) does not require the court clerk to remove T.T.'s name from the ICON/Eclipse case management system. Moreover, the removal of names from the ICON/Eclipse case management system would thwart the court's statutory obligations to link the record of a short-term mental health case with subsequent cases concerning the long-term treatment of that individual and to share certain information with the federal

8

government. *See* 18 U.S.C. § 922(g)(4) (2018); §§ 13-9-123 to -124, C.R.S. (2018); § 24-33.5-424, C.R.S. (2018). Because the district court's compliance with the court of appeals' mandate is neither warranted nor feasible, we discharge the rule to show cause, and disapprove of the court of appeals' opinion in *T.T.*

## A. Jurisdiction under C.A.R. 21

¶16    The exercise of original jurisdiction under C.A.R. 21 lies within this court's sole discretion. *Fognani v. Young*, 115 P.3d 1268, 1271 (Colo. 2005). Relief under C.A.R. 21 is "an extraordinary remedy that is limited in both purpose and availability." *Villas at Highland Park Homeowners Ass'n, Inc. v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 22, 394 P.3d 1144, 1151. We may exercise our original jurisdiction when the normal appellate process provides an inadequate remedy. *Fognani*, 115 P.3d at 1271. We may also grant relief under C.A.R. 21 in the exercise of our general superintending authority over all courts as provided in article VI, section 2 of the Colorado Constitution. C.A.R. 21(a)(1). Here, T.T. seeks compliance with the court of appeals' mandate. The district court has instead invited T.T. to hold a hearing to take testimony on the feasibility of compliance and the court of appeals has denied T.T.'s request to enforce the mandate for lack of jurisdiction. Given the unique circumstances, we conclude that exercise of our original jurisdiction is appropriate, both as a matter of our general superintending authority over all courts and because no other adequate remedy is available.

## B. Court Records in Mental Health Cases Are Not Accessible to the Public

¶17 As a preliminary matter, we note that under both statute and court rule, mental health records held by the court are not accessible to the public.

¶18 The care and treatment of persons with mental health disorders is addressed in article 65 of title 27. The legislature has declared that the purposes of article 65 include, as relevant here, providing "the fullest possible measure of privacy, dignity, and other rights to persons undergoing care and treatment for a mental health disorder." § 27-65-101(1)(c), C.R.S. (2018). Under section 27-65-121(1), C.R.S. (2018), all information obtained and records prepared in the course of providing services under article 65 are "confidential and privileged matter" and may be disclosed only to certain individuals or agencies listed under that provision.

¶19 Relevant here, section 27-65-107 addresses certification for short-term treatment of persons who, as a result of a mental health disorder, present a danger to themselves or others or are gravely disabled. § 27-65-107(1). Subsection (7) of the statute requires that records and papers in proceedings under section 27-65-107 "shall be maintained separately" by court clerks. § 27-65-107(7). This provision further mandates that when an individual is released from short-term treatment, the facility shall notify the court clerk within five days, and the clerk shall "seal the record in the case and omit the name of the respondent from the index of cases" unless and until the individual "becomes subject to an order of long-term care and treatment pursuant to section 27-65-109 or . . . the court

orders [the record in the short term-involuntary hold case] opened for good cause shown." *Id.*

¶20    In addition to these statutory provisions, court rule also makes clear that mental health records are not publicly accessible.  Pursuant to its independent constitutional authority to "make and promulgate rules governing the administration of all courts," Colo. Const. art. VI, § 21, this court has adopted rules governing public access to court records and administrative records of the judicial branch.  *See* Public Access to Information and Records Rules (P.A.I.R.R.) 1–2.  P.A.I.R.R. 1 authorizes the Chief Justice to issue directives regarding public access to documents and materials made, received, or maintained by the court, and refers specifically to CJD 05-01, which addresses public access to court records.  Under CJD 05-01, court records in mental health cases are not accessible to the public unless the court orders otherwise.  CJD 05-01, § 4.60(b)(5).  Additionally, any sealed record is not accessible to the public and, absent a court order, may be accessed only by judges, court staff, and authorized judicial department staff. *Id.* §§ 3.07, 4.60(c).[3]

---

[3] The CJD notes that the release of court records sealed under part 7 of article 72 of title 24 is governed by those statutory provisions rather than by the CJD, and that judges and court staff should respond to requests for a statutorily sealed court record by stating that no such record exists.  CJD 05-01, § 3.07.

## C. Eclipse Is Not an Index for Purposes of Section 27-65-107(7)

¶21    The critical question here is whether Eclipse is, as the court of appeals concluded, an "index of cases" as contemplated by section 27-65-107(7). We conclude that it is not.

¶22    As described above, section 27-65-107(7) requires the clerk to do two things: (1) "seal the record in the case," *and* (2) "omit the name of the respondent from the index of cases." These separate commands make clear that the court's "record" of the case itself is distinct from the court's "index of cases." The question then becomes, what is the "index" contemplated by the statute?

¶23    As the court of appeals recognized, several other statutory provisions governing the administration of the courts help shed light on the meaning of the term "index." First, section 13-1-101, C.R.S. (2018), mandates that clerks of court "keep in their respective offices suitable books for indexing the records of their said offices, one to be known as the direct index and one as the inverse index." This provision was enacted in 1889, *see* 1889 Colo. Sess. Laws 107, and has remained essentially unchanged over the last 130 years. Section 13-1-102, C.R.S. (2018), also enacted in 1889, *see id.*, describes the information to be included "in said indexes," namely, the title and case number of each cause or matter instituted in that court. § 13-1-102. Taken together, these nineteenth century provisions contemplated a physical book, kept in the office of the clerk of court, containing a master list of cases in that court. The index was to contain information that allowed the clerk to locate a particular record kept at the court but did not contain the

12

record itself.  Today, section 13-1-102 provides that a case number reference in the index may be to a physical file or a computer record.  § 13-1-102.

¶24    Although technology has advanced significantly since these provisions were enacted 130 years ago, the purpose of the index was to facilitate the location of the records of the cases before the court.  As we explain below, ICON/Eclipse is not such a list of cases and therefore does not constitute an "index" for purposes of section 27-65-107(7).

### D.  Compliance with the Court of Appeals' Mandate to Remove T.T. from Eclipse Is Neither Warranted nor Feasible

¶25    Based on the limited record before it, the court of appeals mistakenly concluded that the Eclipse system is an index of cases for purposes of section 27-65-107(7).  But Eclipse is not an "index" akin to a list of cases, nor does Eclipse itself even contain any data.  Rather, Eclipse is a user interface used to access the judicial department's master database of court records, called ICON.[4]  Eclipse allows authorized employees to search for, compile, and review information from the ICON database in an understandable format.  It is a search tool used by court staff and is not available to the general public.  T.T.'s name and its link to his mental health case are contained in the underlying ICON

---

[4] We may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." CRE 201(b)(2). Given the unusual circumstances and posture of this case, we choose to take judicial notice of the recordkeeping system used by the Colorado courts as presented in Respondents' offer of proof in their brief to this court, which T.T. does not contest.  To remand for a hearing to present the same information by testimony would be an unnecessary waste of judicial resources.  For purposes of resolving this C.A.R. 21 petition, we accept the facts presented in Respondents' offer of proof as true.

13

database, not in Eclipse itself. To the extent that the ICON/Eclipse case management system can be used to generate a list of cases, the district court properly ordered that T.T.'s name be omitted from any such list. But as a practical matter, the district court cannot "omit T.T.'s name from the Eclipse system" in compliance with the court of appeals' mandate because Eclipse itself is simply the user interface of the case management system; it is not an "index" or list of cases generated by that system used to locate court records.

¶26 The court of appeals reasoned that "omitting T.T.'s name from the Eclipse system" would not be problematic, noting that "identifying information . . . is often omitted from court records and case names as required in the interest of privacy." *T.T.*, ¶¶ 24–25. But this statement is only partly accurate.

¶27 It is true, for example, that section 24-72-304(4)(a), C.R.S. (2018), requires removal of the names of sexual assault victims in certain criminal court records before such records may be released to any individual or agency other than a criminal justice agency, and that section 19-2-903, C.R.S. (2018), requires juveniles to be identified by initials in the record on appeal. But provisions like these have no bearing on how the ICON/Eclipse case management system is used to track information related to mental health cases and do not support the relief that T.T. seeks here. The names of crime victims (including sexual assault victims) cannot be searched for or otherwise retrieved using Eclipse. The omission of a crime victim's name from other criminal justice records has no impact on how a case can be retrieved using Eclipse or connected to other cases stored

14

in ICON. And although juveniles are identified by their initials in appellate captions, their full names are maintained in the ICON database and can be retrieved by authorized users of Eclipse. By contrast, T.T. effectively seeks removal of his name from the ICON database itself. But section 27-65-107(7) does not require this.

¶28 The judicial branch's ability to search for and track data in ICON using the Eclipse interface is only as good as the information in that system. Removing T.T.'s name (or even simply replacing it with initials) from the underlying database effectively prevents authorized users of the Eclipse user interface from properly tracking cases involving him in the future. Parties' initials are not specific enough forms of identification to serve as acceptable substitutes for full names in the underlying database, particularly given that the ICON/Eclipse system is used to access tens of thousands of cases involving short-term commitments that have been initiated over the last two decades under section 27-65-107.

¶29 Moreover, without the ability to link an order for short-term commitment for mental health treatment to an order of long-term care and treatment, a court could not, as required by section 27-65-107(7), open the short-term commitment record and make it a part of the record in a subsequent long-term treatment case. Similarly, removing names from the ICON database would hinder the State's ability to share required information with the National Instant Criminal Background Check System (NICS) to ensure that individuals with mental health issues who pose a danger to themselves or others cannot purchase firearms. *See* 18 U.S.C. § 922(g)(4); §§ 13-9-123 to -124; § 24-33.5-424;

15

*Ray v. People*, 2019 COA 24, ¶ 2, __ P.2d. __ (explaining the complex interplay between Colorado statutes and the federal Brady Handgun Violence Prevention Act, which mandates that certain Colorado persons and entities provide names of those involuntarily certified for short-term treatment of mental health disorders under Colorado's section 27-65-107 for inclusion in the NICS database). If the full names of individuals who have been subject to short-term commitment for mental health treatment are not contained in ICON, the court system cannot share them with NICS, frustrating the purposes of applicable state and federal law.

¶30 In sum, we conclude that compliance with the court of appeals' mandate to omit T.T.'s name from Eclipse is neither warranted nor feasible. We emphasize, however, that T.T.'s short-term mental health case is sealed and inaccessible to the public. *See* CJD 05-01, §§ 3.07, 4.60(b)(5), (c).

### III. Conclusion

¶31 We hold that neither Eclipse nor its underlying database, ICON, functions as an "index of cases." Thus, contrary to the court of appeals' ruling in *T.T.*, section 27-65-107(7) does not require the court clerk to remove T.T.'s name from the ICON/Eclipse case management system. Because the district court cannot comply with the relief directed by the court of appeals, we discharge the rule to show cause. Further, because the lack of an adequate record led to the court of appeals' mistaken understanding about the nature of the ICON/Eclipse case management system, and

because the court of appeals' opinion in *T.T.* may undermine administration of the judicial branch's recordkeeping system, we disapprove of that opinion.

**JUSTICE SAMOUR** does not participate.